UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

GT SOLAR INCORPORATED,

       Plaintiff,

v.

FABRIZIO GOI,

       Defendant.

Case No.: 1:08-cv-249-JL

**PLAINTIFF GT SOLAR'S RESPONSE TO**
**<u>DEFENDANT GOI'S MOTION TO SUPPLEMENT THE RECORD</u>**

    Defendant Fabrizio Goi's ("Goi's") Motion to Supplement the Record ("Motion to Supplement") should be denied because it is futile and it is late. The requested supplementation does not change the merits of the jurisdictional issue that is under submission with the present record. Moreover, Goi's third attempt to supplement the record with testimony comes late—at some point, this briefing must come to an end. Should the Court nevertheless grant the Motion to Supplement and conclude that it does materially impact the record, then Plaintiff GT Solar Incorporated ("GT Solar") seeks leave to supplement the record with additional evidence of its own.

I. **Goi's Requested Supplementation Is Futile Because It Does Not Alter The Merits of the Jurisdictional Inquiry.**

   A. **Goi's new testimony at best raises additional fact issues that this Court should not decide against GT Solar under the "likelihood" standard, and in fact does not materially change the record as it pertains to the jurisdictional inquiry.**

In *Foster Miller, Inc. v. Babcock & Wilcox - Canada*, 46 F.3d 138, 148 (1st Cir. 1995), the First Circuit cautioned that "to the limited extent that dismissals under the [intermediate "likelihood" standard adopted by this Court] are justified at all, they will happen only rarely. Even then, the exact bounds of permissible application may not always be evident." In so doing, the First Circuit stated that a district court can under no circumstances dismiss a case by finding facts against a plaintiff that are "very closely related to the merits of the plaintiff's substantive case, thus prematurely extinguishing a plaintiff's ability to present its case in a full and fair manner." *Id*.

This "mischief"—to use the First Circuit's parlance—is precisely what Goi's Supplemental Motion invites. In essence, Goi asks this Court to dismiss the case on the basis of at least three factual conclusions: (1) If Goi received trade secrets from New Hampshire, he only received them before September 16, 2006, when he "verbally resigned from VRV upon receiving an offer" from Tecniplant S.p.A; (2) Goi could not have misappropriated any trade secrets received from GT Solar before September 16, 2006 because his *onl*y business relationship outside of VRV while working on the GT Solar project was with Tecniplant, a company that had no use for GT Solar trade secrets; and (3) Goi could not have misappropriated any GT Solar trade secrets that he received after September of 2006 (from New Hampshire or elsewhere) as a result of a relationship with GT Solar that was forged and nurtured in New Hampshire (*e.g.* building a relationship with Jim Bosco, participating in contract negotiations, being contractually

designated VRV's contact with GT Solar, being principal day-to-day VRV contact with GT Solar). These are conclusions that this Court should not and, given the record, cannot make.

Moreover, Goi's new proffered testimony does not materially change the record as it now stands. Goi does not state when his relationship with PPP-E commenced. Assuming it to be true, the fact that Goi obtained a job offer from Tecniplant on September 13, 2006 does not mean that he was not then also communicating with PPP-E. Nor does Goi state that he did not obtain GT Solar trade secrets from New Hampshire after September 16, 2006. Indeed, GT Solar's Jim Bosco attests to a number of contacts between him and Mr. Goi after September 2006 that involved the communication of proprietary GT Solar information (*See, e.g.,* 9/19/08 Declaration of J. Bosco ("Bosco Dec."), at ¶ 33 (referencing the furnishing of proprietary information by him to Goi at Goi's request in January of 2007)). And, finally, Goi does not present any evidence to rebut GT Solar's evidence—direct and inferential—that his contacts with New Hampshire facilitated the misappropriation of proprietary GT Solar information received from New Hampshire or Montana after September 2006.

In sum, assuming it were the case that to secure jurisdiction over Goi's person in this Court, GT Solar must ultimately establish that the misappropriation of its trade secrets were "proximately caused" by Goi's contacts with New Hampshire, the record now before this Court—even if supplemented a third time by Goi—compels the denial of Goi's jurisdictional challenge under the intermediate "likelihood" standard. But, as explained below and acknowledged by this Court during last week's hearing, the jurisdictional standard allows for less than a "proximate cause" standard.

B. **The First Circuit Has Found Specific Jurisdiction When There Is A Substantial Relationship Between The Parties And The Torts At Issue Are Extra-Territorial.**

In his effort to supplement to record Goi takes the position that unless his misappropriation of GT Solar's trade secrets took place in New Hampshire, personal jurisdiction does not exist. (Motion to Supplement, at ¶ 2). But that is not the law. The relatedness inquiry applies a "flexible, relaxed standard[.]" *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). The First Circuit warns that "strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive." *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1995). Indeed, where there is a substantial relationship entailing in-state contacts between the parties and an extra-jurisdictional tort occurs "in the wake of" that relationship, there is "no reason why" "the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional." *Id.*, at 715-716

In *Nowak*, the First Circuit held that the absence of in-forum tortious conduct does not preclude the constitutional exercise of specific personal jurisdiction. 94 F.3d at 716. There, the plaintiff's wife—a Massachusetts resident—drowned in a Hong Kong swimming pool on the premises of a hotel owned by the defendant. Plaintiff sued in Massachusetts for wrongful death. The defendant had no physical presence in the United States, and it was undisputed that no negligent act by the defendant ever occurred in Massachusetts. *Id.* at 709. Like here, however, there was a substantial history of communications—faxes, phone calls and letters—between defendant and the plaintiff in Massachusetts. *Id.* These communications blossomed into a business relationship wherein the plaintiff became one of the defendant's regular customers. Even though no tortious conduct had occurred in Massachusetts, the First Circuit found that personal jurisdiction was properly exercised there because the hotel stay—and thus the drowning—resulted from an ongoing business relationship between the plaintiff and the hotel.

4

Because of this relationship, which had been fostered by the defendant's in-forum communications, the "nexus between the contacts and the cause of action is sufficiently strong to" establish relatedness. *Id.*, at 715-16.

As in *Nowak*, given the substantial relationship between Goi and GT Solar in New Hampshire, whether Goi's contacts in this state "proximately caused" the torts and breaches complained of in the GT Solar complaint is not determinative. Foreseeability is the lynchpin of the Due Process analysis, *see id.*, at 716, and Goi's systemic activity in New Hampshire as VRV's principal agent in the GT Solar reactor fabrication relationship made it reasonably foreseeable for Goi to be held accountable in this Court for his torts and breaches, *see id*. (there is "no reason why" "the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional."). That is so even if one accepts Goi's argument that a misappropriation, if any, occurred with trade secrets lawfully obtained from Montana and transferred to PPP-E after his relationship with VRV and GT Solar ended. Indeed, such a scenario raises a second—and independent—basis for jurisdiction over Goi: Goi should have foreseen being held accountable in this Court because he understood that he was targeting and injuring a New Hampshire entity.

**C. The Effects Test Satisfies "Relatedness" When A Defendant Deliberately Aims An Intentional Tort At An In-State Plaintiff**

In the seminal case of *Calder v. Jones*, Shirley Jones—an actress residing in California—sued two Florida-based journalists in a California court over the publication of a defamatory story in the *National Enquirer*. 465 U.S. 783, 785 (1984). Focusing on the defendants' personal conduct,[1] the Court found two facts dispositive:

---

[1] The Court confined its inquiry to the actions of the individual defendants; it expressly did not take into account their employer's act of distributing its newspaper in California as a "contact" attributable to the defendants. *Id* at 790 ("Petitioners are correct that their contacts

5

> Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation.

*Id.*, at 789–90.

Based on these facts, the Court concluded that: "jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California." *Id.*, at 791. As the court noted, "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.*

In *Northern Laminate Sales, Inc. v. Davis*, the New Hampshire plaintiff and Mr. Davis, the New York defendant, were in a business relationship that, like here, entailed substantial telephone, email, and mailed communications between the parties' respective home states. 403 F.3d 14, 18-20 (1st Cir. 2005). The plaintiff's claim, however, arose from an allegedly fraudulent statement that occurred in a meeting at the Defendant's New York offices. The Defendant argued that the "only relevant contact between himself, a New York resident, and New Hampshire, the location of the suit, was the impact of the allegedly fraudulent misrepresentations he made during [the] meeting . . . in New York." *Id.*, at 21. He further argued that "any other contacts [were] 'irrelevant' because these communications ha[d] no 'nexus' with the fraud." *Id.*

Relying on *Calder*, the First Circuit quickly dispatched these arguments. *Id.*, at 24. As the court noted, the act of committing a deliberate fraud on an acknowledged resident of New Hampshire, was itself a "contact" with New Hampshire, even though the defendant "had not stepped foot in New Hampshire for over ten years." *Id.*, at 25 ("[A] defendant need not be

---

with California are not to be judged according to their employer's activities there.").

physically present in the forum state to cause injury (and thus "activity" for jurisdictional purposes) in the forum state."). Moreover, because the plaintiff's injury was a direct result of this deliberate conduct, the relatedness element was satisfied. *Id.*

In seeking leave to supplement the record, Goi cites to this Court's decision in *PFIP, LLC v. You-Fit, Inc.*, 2009 DNH 59; 2009 WL 1121359 (D.N.H. April 27, 2009). In that case, this Court suggested in dicta[2] that *Northern Laminate Sales* did not require an exercise of jurisdiction when the plaintiff claimed to have suffered harm in New Hampshire resulting from the defendants' allegedly infringing activities that occurred in another state. *Id.*, at *14 n.22. For this point, the court cited another recent unpublished case from this district: *NeoDevices, Inc. v. Neomed, Inc*., 2009 DNH 20, 2009 WL 689881, at *4 (D.N.H. Mar. 12, 2009). Both *PFIP* and *NeoDevices* sought to distinguish *Northern Laminate Sales* on the grounds that, in the latter case, the defendant "had considerable contact with New Hampshire," by telephone and email, and that such contacts were "overwhelming when compared to defendants' alleged contacts" in the cases at bar. *NeoDevices*, 2009 WL 689881 at *4 & n.3; *see also PFIP* 2009 WL 1121359 at *14 n.22 (citing *NeoDevices*).[3] Thus, contrary to Goi's position, the proposition that relatedness can under the facts of this case be established by in-forum effects of an extra-forum tort is not entirely inconsistent with prior rulings of this Court and that of others, but supported by Supreme Court and First Circuit precedent.

---

[2] The Court ultimately assumed that relatedness was met and dismissed the case because the plaintiff did not satisfy the third "unreasonableness" prong of the personal jurisdiction analysis. *See PFIP*; 2009 WL 1121359 at *13 (assuming without deciding that relatedness and purposeful availment were established).

[3] Contrary to some First Circuit precedent, GT Solar does not believe that the Supreme Court's holding in *Calder* requires substantial contacts with the forum state where there is conduct designed to target and injure a forum state resident. But addressing this issue is neither appropriate before this Court nor necessary given that the facts here do establish systematic contact by the defendant with the forum state.

7

Here, GT Solar has submitted strong evidence establishing the "considerable contacts" that were present in *Northern Laminate Sales* and which were determined to be distinguishingly absent in *NeoDevices*, and *PFIP*. The regular contacts between Goi and GT Solar—by a constant stream of mutual exchanges of email, telephone, and other communications, and by a personal visit to GT Solar's New Hampshire Headquarters by Goi—are sufficient to establish that Goi's contacts relate to GT Solar's claims *even if* Goi did not physically commit any tortious act while in the jurisdiction of the State of New Hampshire. *See The Scuderi Group, LLC v. LGD Technology, LLC*, 575 F. Supp. 2d 312, 321-22 (D. Mass. 2008) (in misappropriation case, holding that in-forum contacts that established relationship leading to exchange of trade secrets were sufficiently related, even though the alleged misappropriation occurred outside the forum). This comports with both *NeoDevices*' reading of *Northern Laminate Sales*, as well as the clear holding of *Nowak* and the plain language of New Hampshire's long-arm statute.

**II.    Goi's Motion to Supplement The Record Is Late**

In moving to supplement the record, Goi notes that it was not until last week's hearing that GT Solar advanced the argument that Goi had a relationship with PPP-E that likely pre-existed his departure from VRV and impacted his relationship with GT Solar. (Motion to Supplement, at ¶ 3). That simply is not the case. Goi's "sudden" departure from VRV was trumpeted in GT Solar's briefing and pleadings to communicate just that. Goi had ample opportunity to rebut that charge before now. Indeed, he still does not rebut the charge in his third affidavit, much less offer any meaningful insight into his relationship with PPP-E while he was working with GT Solar.

As the First Circuit has held, a denial of Goi's Motion to Dismiss at this stage merely defers "until trial . . . the final ruling on jurisdiction." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 678 (1st Cir. 1992). "Rather than allowing full opportunity for both parties to present all

8

relevant evidence and requiring that plaintiffs, at a pretrial hearing, mount proof which would, in effect, establish the validity of their claims and their right to the relief sought," *id.*, this Court "may place reasonable constraints on the scope and length of the evidentiary hearing," *id.*  Here, Goi has litigated his motion to dismiss for lack of personal jurisdiction for over a year.  He has filed three personal declarations, as well as multiple motions, oppositions and replies.  GT Solar has submitted twenty-six separate pieces of evidence rebutting Goi's motion and proving the existence of this Court's personal jurisdiction over Goi. (*see* Bosco Dec., Exs. 1-26).  It is time to proceed on the merits.  A denial of Goi's jurisdictional motion would give Goi the "consolation of having been afforded a detailed demonstration, beyond a mere *prima facie* showing, of why the court deems it fair to exercise jurisdiction, at least provisionally."  *Foster Miller, Inc.*, 46 F.3d at 148.

**III.     Conclusion**

For the foregoing reasons, Goi's Motion to Supplement should be denied.  Should the Court decide to grant the Motion to Supplement and conclude that the supplemental testimony is material to the merits of the jurisdictional issue before it, then GT Solar seeks leave to supplement the record with additional evidence of its own.

Date:                              September 21, 2009

**GT SOLAR INCORPORATED**,

By its attorneys:

/s/ R. Matthew Cairns
R. Matthew Cairns (N.H. Bar No. 411)
cairns@gcglaw.com
GALLAGHER, CALLAHAN & GARTRELL
Box 1415
Concord, NH 03302-1415
T:  603-228-1181

/s/ Luke L. Dauchot
Luke L. Dauchot (Cal. Bar No. 229829)
ldauchot@kirkland.com
Michael J. Shipley (Cal. Bar No. 233674)
mshipley@kirkland.com
R.C. Harlan (Cal. Bar No. 234279)
rharlan@kirkland.com
KIRKLAND & ELLIS LLP
777 S. Figueroa St.
Los Angeles, CA 90017
T:  213-680-8400
F:  213-680-8500


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served this date via the Court's Electronic Case Filing (ECF) system upon all parties.


September 21, 2009                /s/ Luke L. Dauchot
                                  Luke L. Dauchot (Cal. Bar No. 229829)

10