UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>GT Solar Incorporated</u>

    v.                            Civil No. 08-cv-249-JL
                                         Opinion No. 2009 DNH 156

<u>Fabrizio Goi</u>

**OPINION AND ORDER**

This case presents the question of whether, in a contract and tort action, this court can exercise personal jurisdiction over a foreign defendant whose contacts with New Hampshire were primarily via telephone and email.  It also requires consideration of the doctrine of forum non conveniens.  The plaintiff, GT Solar Incorporated, a Delaware corporation whose principal place of business is Merrimack, New Hampshire, filed this action against Fabrizio Goi, an Italian national formerly employed by GT Solar's Italian supplier, VRV S.p.A.  GT Solar alleges that, while employed by VRV, Goi improperly obtained certain confidential information about GT Solar's manufacturing process and, after leaving VRV, shared that information with GT Solar's California-based competitor.

GT Solar filed this action alleging various tort and contract claims.  Goi moved to dismiss the action for lack of personal jurisdiction, <u>see</u> Fed. R. Civ. Pro. 12(b)(2), and under

the doctrine of forum non conveniens.  After a hearing,[1] the
court concludes that at this point,[2] GT Solar has satisfied its
burden of demonstrating the likelihood that Goi's significant
telephone and email contacts with New Hampshire subject him to
jurisdiction in this court, at least as to GT Solar's contract
claims.[3]  Goi has not demonstrated that Italy provides a more
convenient and fair forum.  Goi's motion, therefore, is denied on
both of its underlying grounds:  personal jurisdiction and forum
non conveniens.

---

[1]After submission of the parties' pleadings, the court
concluded that it would not apply the prima facie standard of
review.  See generally, Foster-Miller, Inc. v. Babcock & Wilcox
Can., 46 F.3d 138, 145-147 (1st Cir. 1995).  The court also
concluded that although there were disputes regarding certain
facts arguably material to the jurisdictional issues presented by
the motion to dismiss, taking testimony in open court would waste
judicial resources.  See Boit v. Gar-Tec Prods., Inc., 967 F.2d
671, 676 (1st Cir. 1992).  Prior to the hearing, both parties
filed affidavits, discovery materials, and supporting
documentation, allowing the court to make the necessary
jurisdictional determinations on the record before it.  Id.

[2]As discussed infra notes 20 & 24, the court's choice of the
likelihood standard leaves open the possibility of further
jurisdictional challenges as the discovery process progresses.

[3]As discussed infra, the court will retain jurisdiction over
the rest of GT Solar's claims pursuant to the doctrine of pendent
jurisdiction.  See, e.g., Anderson v. Century Prods. Co., 943 F.
Supp. 137, 144-47 (D.N.H. 1996); Hall v. Nelson Aircraft Sales,
Inc., No. CVF051529 REC LJO, 2006 WL 902449, at *5-*6 (E.D.Cal.
2006) (citing CE Distrib., LLC v. New Sensor Corp., 380 F.3d
1107, 1113 (9th Cir. 2004)).

I.    **BACKGROUND**[4]

GT Solar designs and supplies industrial equipment used to refine polysilicon, a material used in the manufacture of photovoltaic cells.  A key component in the manufacture of polysilicon is a specialized furnace, or "reactor," that forms rods of pure polysilicon from the raw material.  In 2006, GT Solar obtained from an Italian engineering firm, Poly Engineering S.r.L., an exclusive license to the design of the "PE 36 Rod Reactor."  GT Solar claims that it later made improvements to the design of the PE reactor, which it currently sells as the "GT Solar 36 Rod Reactor."

In 2006, GT Solar began negotiations with VRV as a potential manufacturer of GT Solar's 36 Rod Reactor.  GT Solar and VRV entered into a "Confidentiality Agreement"[5] intended to protect

---

[4]Most jurisdictional decisions apply the prima facie standard of review, and as such, the facts are set forth in a light most favorable to the plaintiff.  See generally Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).  Here, however, where the appropriate standard of review is contested, see Part II, infra, the court, for background purposes only, recites mainly uncontested facts, noting disputes where they exist.

[5]GT Solar filed an affidavit of a company employee, James Bosco, in support of its memoranda in opposition to Goi's motion to dismiss.  P's Opp. Mot., Ex. 1 (hereinafter the "Bosco Aff.")  It attached, as exhibits to the affidavit,  hard copies of email exchanges between employees of GT Solar and VRV, (hereinafter "Bosco Aff. Ex."), including one email that had a copy of the Confidentiality Agreement as an attachment.  See Bosco Aff., Ex. 8.  Given the proprietary nature of some of the information within those emails, the Bosco exhibits are now under seal.  See

proprietary information of both entities as they began the
process of negotiating a supply agreement.  The Confidentiality
Agreement required GT Solar and VRV to alert their employees
about the confidential nature of certain technical information
and the proper use and non-disclosure of such information.  In
August, 2006, Goi, who was then Director of Sales for VRV,[6] and
his superior, Alessandro Spada, VRV's CEO, attended a meeting at
GT Solar's Merrimack, New Hampshire headquarters to discuss the
potential business arrangements between GT Solar and VRV.[7]

---

GT Solar, Inc. v. Fabrizio Goi, No. 1:08-cv-249 (D.N.H. Sept. 27,
2008) (order sealing exhibits 1-26 of the Bosco affidavit).

[6]Def.'s Mot. to Dismiss, Ex. 1, Decl. of Fabrizio Goi, ¶ 3.
Goi filed two separate affidavits with the court.  See Def.'s
Mot. to Dismiss, Ex. 1, Decl. of Fabrizio Goi; Def.'s Reply,
Ex.1, Second Decl. of Fabrizio Goi.  For purposes of this order,
they will be referred to as "Goi Aff. I" and "Goi Aff. II".
After the hearing on this motion, Goi requested leave to file yet
another affidavit with the court.  See Def.'s Mot. for Leave to
Suppl. the Record, Decl. of Fabrizio Goi (Goi Aff. III).  As
discussed in note 29 infra, the defendant's motion was denied as
moot and as such, the court does not rely on Goi's third
affidavit.

[7]The parties dispute what occurred at that meeting.  Goi
contends that "[t]he purpose of the meeting was to negotiate
price and delivery schedule of VRV reactors" and that he attended
the meeting to "describe VRV's technology and production
capability."  He claims that there was, at most, a limited
discussion of a purchase agreement with GT Solar.  See Goi Aff.
I, ¶¶ 11-12.  GT Solar officials contend that Goi was a "key"
participant, and that the parties "negotiated the material terms
of an anticipated GT Solar/VRV contract."  Bosco Aff. ¶ 14.  It
is undisputed, however, that this was Goi's only trip to New
Hampshire and that it lasted less than 24 hours.

GT Solar eventually signed an agreement with VRV to fabricate GT Solar reactors.[8]  In that agreement, each company was required to protect any confidential information from inappropriate disclosure.  Further, VRV was required to obtain written agreements with its employees to preserve the confidentiality of GT Solar's proprietary design information.  GT Solar eventually placed orders with VRV for rod reactors in November 2006 and again in early 2007.[9]  Although the parties agree that during this period Goi was the Director of Sales at VRV, as noted in Part II, <u>infra</u>, his role in communicating with GT Solar employees is disputed.  Briefly stated, GT Solar casts Goi as its primary liaison at VRV and alleges regular contact between Goi and company officials in New Hampshire.  <u>See</u> Bosco Aff. ¶ 2.  Goi contends that GT Solar worked mostly with other VRV employees.  He further claims that particularly after the Purchase Agreement was signed, when he did communicate with GT Solar, it was with GT Solar employees in Montana, not New Hampshire.  <u>See</u> Goi Aff. I, ¶¶ 20-21.

In any event, Goi left VRV in March 2007 to work as a consultant for a California manufacturing company, Poly Plant

---

[8]Bosco Aff. Exs. 20-21.  The parties refer to this agreement as both the "Supply Agreement" and "General Purchase Agreement."

[9]Goi Aff. I, ¶¶ 21-22.

5

Project, or "Poly Plant."[10]  GT Solar alleges that Goi, while
employed at VRV, had access to drawings and other confidential
information regarding the design and manufacture of GT Solar's
rod reactors and that he provided that information to Poly Plant.
According to GT Solar, within months of Goi's departure from VRV,
Poly Plant, which was created in February 2007, began marketing a
rod reactor similar to GT Solar's 36 rod reactor.[11]  GT Solar
further alleges that Poly Plant has sold a number of these
reactors, and that it "continues to exploit the design that Goi,
upon information and belief, misappropriated from GT Solar and
VRV."  Complaint ¶ 29.  GT Solar filed this action, alleging six
counts:  misappropriation of trade secrets, see N.H. Rev. Stat.
Ann. § 350-B (2008), (Count 1), conversion, (Count 2), breach of
implied-in-fact contract, (Count 3), breach of contract, (Count
4), Consumer Protection Act violations, see N.H. Rev. Stat. Ann.
§ 358-A (2008), (Count 5) and (6) tortious interference with
business relations (Count 6).

---

[10]Goi states that the name of his new employer is "PPP-E,"
perhaps referring to an affiliate "Poly Plant Project
Engineering," Goi Aff. I ¶ 23, Complaint at ¶ 5, while GT Solar
uses the name "PPP." Complaint at ¶ 22.  It is undisputed,
however, that although Poly Plant is a California company, Goi
continues to be based in Italy.  Goi Aff. I ¶ 23.

[11]Poly Plant is not a party to this action and apparently
denies any impropriety.  See Complaint ¶ 25.

## II.  <u>APPLICABLE LEGAL STANDARD</u>

The plaintiff carries the burden of establishing personal jurisdiction over the defendant, <u>see</u>, <u>e.g.</u>, <u>Hannon v. Beard</u>, 524 F.3d 275, 279 (1st Cir. 2008), under one of three standards of review:  the prima facie standard, the preponderance of the evidence standard, and an intermediate "likelihood" standard. <u>See</u>, <u>e.g.</u>, <u>Foster-Miller</u>, 46 F.3d at 145-47; <u>Boit</u>, 967 F.2d at 674-78.

The most commonly used and generally preferred standard is the prima facie standard, <u>see Daynard</u>, 290 F.3d at 51; <u>Boit</u>, 967 F.2d at 677, under which courts "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n.</u>, 142 F.3d 26, 34 (1st Cir. 1998); <u>see also Daynard</u>, 290 F.3d at 51.  Courts may then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." <u>Mass. Sch. of Law</u>, 142 F.3d at 34.  In this analysis, however, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." <u>United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993) ("Pleasant

Street II").  The court does not assess credibility or engage in other "differential factfinding."  Foster-Miller, 46 F.3d at 145.

In situations where "the proffered evidence is conflicting and the record is rife with contradictions," the court, in its discretion, may require the plaintiff to make more than a prima facie showing and apply one of the two remaining standards. Boit, 967 F.2d at 676.  Under a preponderance of the evidence standard, the court "embark[s] on a factfinding mission in the traditional way, taking evidence and measuring a plaintiff's jurisdictional showing against a preponderance-of-the-evidence standard."  Foster-Miller, 46 F.3d at 145.  This standard "must be used discreetly," because pretrial findings by a preponderance of the evidence may present difficult issues of preclusion and impact the right to a trial by jury.  Id.; see also Boit, 967 F.2d at 677.  Furthermore, because the preponderance standard "[v]irtually by definition, . . . necessitates a full-blown evidentiary hearing," it can lead to an inefficient use of judicial resources.  Foster-Miller, 46 F.3d at 146.  Courts are discouraged from using the preponderance standard out of fairness to plaintiffs.  "[P]ostponing proof by a preponderance of the evidence until trial has the additional advantage of allowing a plaintiff, when required to prove by a preponderance of the evidence, to present proof in a coherent, orderly fashion and

without the risk of prejudicing his case on the merits." Boit, 967 F.2d at 677 (quotations omitted).

Where determination under the prima facie standard would be unfair to a foreign defendant because the jurisdictional facts are contested, but use of the preponderance standard is nevertheless unwise, "trial courts might steer a middle course by engaging in some differential factfinding, limited to probable outcomes as opposed to definitive findings of fact, thereby skirting potential preclusionary problems while at the same time enhancing the courts' ability to weed out unfounded claims of jurisdiction." Foster-Miller, 46 F.3d at 145-46. "Under the likelihood standard, the determinations of accuracy and integrity of plaintiffs' assertions are not true findings of fact, for they lack definitiveness to some degree, and they also lack the preclusive quality that would otherwise normally attach." Barreras Ruiz v. American Tobacco Co., 977 F.Supp. 545, 548 (D.P.R. 1997) (quotations omitted). A court using the likelihood standard can weigh conflicting evidence, but can still "achieve a just, speedy, and inexpensive determination," because it "may merely find whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction." Boit, 967 F.2d at 677-78 (quotations omitted). "This showing constitutes an assurance that the circumstances justify imposing on a foreign defendant the burdens of trial in a

9

strange forum, but leaves to the time of trial a binding resolution of the factual disputes common to both the jurisdictional issue and merits of the claim." <u>Foster-Miller</u>, 46 F.3d at 146.

The court, after careful review and supplemental briefing by the parties,[12] concludes that "the most likely way to achieve a just, speedy, and inexpensive determination," <u>see</u> <u>Boit</u>, 967 F.2d at 678 (quotations omitted), is to apply the intermediate standard of review.[13]

In order to best articulate why the court declines to apply the prima facie standard or preponderance standards, it is necessary to briefly discuss the contradictions at the heart of this jurisdictional dispute.  As discussed <u>infra</u> Part III, the plaintiff grounds its jurisdictional claim primarily on an

---

[12]In accordance with First Circuit precedent, <u>see</u>, <u>e.g</u>, <u>Rodriquez v. Fullerton Tires Corp.</u>, 115 F.3d 81, 84 (1st Cir. 1997), the court was careful to alert the parties that it was considering use of a standard other than prima facie as soon as it became apparent to the court and allowed the parties to file supplemental briefing on the issue.  <u>See</u> <u>GT Solar, Inc. v. Goi</u>, No. 1:08-cv-249 (D.N.H. Aug. 12, 2009)(notifying parties, in advance of hearing, of its intention to apply the likelihood standard); <u>cf.</u> <u>GT Solar, Inc. v. Goi</u>, No. 1:08-cv-249 (D.N.H. May 28, 2009) (ordering supplemental briefing after notification of possibility that a standard other than prima facie may be applied).

[13]The court notes that in their supplemental briefing, neither party advocated in favor of the intermediate standard. Rather, each party encouraged the court to apply the standard most favorable to its position.

alleged series of regular email and telephone negotiations between the defendant in Italy and company officials in New Hampshire in 2006 and 2007, and one brief visit to New Hampshire in August 2006.  See generally, Bosco Aff. ¶¶ 3, 14, 24.

But the defendant, in the first of two affidavits filed with the court, initially claimed that as Director of Sales for VRV he "worked with other VRV employees to develop an estimate based on . . . a previous polysilicon reactor, [but that] [d]uring this process [he] had no communication with GT Solar employees and no [sic] GT Solar's proprietary information was identified or exchanged."  Goi Aff. I, ¶¶ 3, 6.  Goi did state that after a brief trip to New Hampshire,[14] "I had occasional telephone and e-mail communications with GT Solar employees.  Between August 2006 and November 2006, many of these communications were with [GT Solar employees] in . . . Montana."  Id. ¶ 20.  He further stated that after GT Solar placed its first order in November 2006, other VRV employees communicated with GT Solar, but that "[i]n early 2007, GT Solar placed a new order for other reactors, at which point [he] again communicated with GT Solar employees.

---

[14]The parties do not dispute the duration of Goi's visit to New Hampshire, namely that he spent less than one day in meetings at GT Solar's company headquarters.  As discussed supra, the parties dispute the content of these meetings, namely whether Goi had access to confidential information or discussed various relevant confidentiality agreements.  Compare Goi Aff. I, ¶¶ 8-18; Bosco Aff. ¶¶ 13-14; Goi Aff. II, ¶¶ 4-6.

Many of these communications were with [a GT Solar employee] who was located outside of New Hampshire." Id. ¶¶ 21-22.

In response, GT Solar filed the declaration of James Bosco, a GT Solar Vice President located in New Hampshire. Bosco stated that in 2006 Goi was his principal contact at VRV and that from June 2006 through March 2007, Bosco "sent, received or was copied on scores of emails between Goi and employees of GT Solar," and that he was "in regular contact with Mr. Goi, via telephone and email," from New Hampshire. Bosco Aff. ¶¶ 1-4. Bosco also attached to his declaration a series of emails that he stated "represent a small fraction of these email communications with Mr. Goi, which typically occurred several times a week." Id. ¶ 3.

Bosco stated that at various times Goi was sent, or had access to, draft confidentiality agreements and that he "was personally involved in negotiating the terms of this confidentiality agreement." Id. ¶¶ 7-10. Further, Bosco claims that after Goi's trip to New Hampshire and continuing through his departure from VRV, "Goi . . . had access to GT Solar's proprietary and confidential information, including data, [and] drawings . . . ." Id. ¶ 17. Bosco specifically referenced a series of emails attached to his affidavit that concern the exchange of technical information between Goi and GT Solar employees (located outside New Hampshire) on which Bosco was

12

either copied, or received directly.  Id. ¶¶ 22-25, 28-29, 32-33.[15]  Bosco specifically stated that "GT Solar engineers and Goi exchanged information regarding changes in the reactor design with Goi [sic] throughout the course of his service as VRV's sales representative.  I was generally copied on these exchanges by both parties.  I also exchanged emails and had telephone conversations with Goi regarding business issues  . . . ."  Id. ¶ 24.  Finally, Bosco provided the court with an email sent to Goi attaching a purchase agreement between GT Solar and VRV containing proprietary information, explaining that "Goi was personally involved in negotiating many of the terms that were ultimately included" in the agreement.  Id. ¶ 27.

In response, Goi filed a second declaration, stating that his first declaration was a product of his memory, unrefreshed at the time by the Bosco declaration.  Although Goi "corrects the record," he never directly contradicts Bosco's statement that Goi was his primary contact and that there were a number of telephone calls between them.[16]  This is significant, because of Bosco's

_____

[15]This includes an email from Bosco allegedly containing "proprietary GT Solar technical information that [Bosco] sent to Goi at his request."  Id. at ¶ 33.

[16]Goi is likewise ambiguous about his role in the negotiation of the confidentiality agreement and knowledge of it, stating only that "I do not remember the negotiation or signature of any confidentiality agreement, and I do not remember ever being informed of a confidentiality agreement, other than the confidentiality clause contained in the General Purchase Agreement." Goi Aff. II, at ¶ 5.

statement in his declaration that "[s]ubstantially all of the telephone communication that I had with Mr. Goi was also from my New Hampshire office."  Bosco Aff. at ¶ 3.

Goi also does not fully contradict Bosco's statements regarding the Purchase Agreement and general contacts between Goi and GT Solar after the New Hampshire meeting.  Specifically, Bosco stated that while Goi and GT Solar engineers (outside New Hampshire) exchanged technical information, "I also exchanged emails and had telephone conversations with Goi regarding business issues such as changes to the quantities of reactors ordered, pricing, scheduling, and delivery."  Bosco Aff. ¶ 24.

Rather, Goi focuses on the email communications between employees of GT Solar and VRV, and claims to have no memory of numerous email exchanges, or of having received proprietary information.  Although he is often the named recipient on emails attached to the Bosco affidavit, Goi points out that the emails

---

Further, he states "I do not remember any confidentiality agreement being discussed or mentioned at the meeting in New Hampshire. The only confidentiality requirement I remember being aware of in my work with GT Solar were the confidentiality clauses in the General Purchase Agreement, which was first sent to me, at my personal email address, by Mr. Bosco on August 20, 2006."  Goi Aff. II ¶¶, at 6-7.  Goi does not contradict Bosco's statement that "Goi was personally involved in negotiating many of the terms that were ultimately included in the executed supply agreement."  Bosco Aff. ¶ 27.

were actually sent to three different email addresses.[17]
According to Goi, the only emails he received were those sent to
his personal VRV email address, "fabrizio.goi@vrv.it."

Goi further asserts that emails sent to "management@vrv.it"
or "commercial@vrv.it" were received by company secretaries who
routinely re-routed the emails to Goi's superiors at VRV. Goi
claims that although he would sometimes receive a paper copy of
those emails, often his superiors would simply respond under his
signature without his knowledge. Goi Aff. II at ¶¶ 13-17.
Accordingly, he contends that he did "not remember ever having
discussed, received, or sent, in email or as paper copy" a number
of the email communications between Goi and Bosco submitted by GT
Solar. Goi Aff. II, ¶¶ 18-20.

Despite this claim the record before the court contains an
email sent to Goi's personal VRV email address with the
confidentiality agreement attached. See Bosco Aff. Ex. 4. Goi
does not directly deny receiving that email, but rather states
that he does "not remember having discussed the email and
attachment," claiming again that it was customary for him to
forward even personal VRV account emails to his superiors, who

---

[17]These were "management@vrv.it," "commercial@vrv.it," and
"fabrizio.goi@vrv.it".

would then respond as "Goi" using his personal VRV email address. Goi Aff. II, at ¶¶ 23-28.[18]

So Goi states that he has "no memory of any communications or discussions regarding a confidentiality agreement, based on the foregoing, . . . I believe that I forwarded the email . . without reading it," and that it was modified, signed by his superior, and returned via email under his signature.  Goi Aff. II, at ¶ 31.

Goi does unambiguously state, in contradiction to Bosco's declaration, that "[n]o confidentiality obligations were discussed at the New Hampshire meeting."  His denial of knowledge of the agreement, however, is incomplete, noting only that "[n]either [his superior] nor any other VRV employee ever informed me that [his superior] had entered into a confidentiality agreement with GT Solar prior to the New Hampshire meeting," and that "[t]o my knowledge, no other employee of VRV was informed, verbally or in writing, of this confidentiality agreement."  Goi Aff. II, at ¶ 32.  This, of course, begs the question of whether GT Solar employees informed him of the terms of the agreement via his personal email, or by

_____

[18]This appears to the court to be inconsistent not only with Bosco's affidavit, but Goi's own recognition, earlier in his affidavit, that he received and reviewed the confidentiality clauses in the General Purchase Agreement "first sent to me, at my personal email address, by Mr. Bosco."  Goi Aff. II, at ¶ 7.

telephone, as Bosco claims.  With respect to Bosco's statement that "Goi was personally involved in negotiating the terms of this confidentiality agreement," Bosco Aff. ¶ 9, Goi states only that "I believe this to be an incorrect statement by Mr. Bosco." Goi Aff. II, at ¶¶ 8-9.

Finally, although Goi's second affidavit correctly points out that many of the email exchanges with GT Solar engineers were sent by Goi to Montana, Goi Aff. II, at ¶¶ 36-37, he does not contradict Bosco's statement that "I also exchanged emails and had telephone conversations with Goi regarding business issues such as changes to the quantities of reactors ordered, pricing, scheduling, and delivery."  Bosco Aff. at ¶ 24.[19]

Although favored, the prima facie standard may be jettisoned by a district court where "the proffered evidence is conflicting and the record is rife with contradictions." Boit, 967 F.2d at 676.  Although Goi never directly contradicts Bosco's claims regarding their telephone contacts, his affidavits paint a contradictory picture of the frequency of the contacts, knowledge of his obligations under the allegedly breached Confidentiality Agreement and confidentiality clauses of the Purchase Agreement, access to the confidential information he allegedly misused, and

---

[19]Again, this must be viewed in light of Bosco's earlier statement that all telephone conversations with Goi were conducted from GT Solar's New Hampshire office.  Bosco Aff. at ¶ 3.

nature of Goi's role in the VRV-GT Solar relationship.  Thus, in

this case, "it is unfair to force an out of state defendant to

incur the expense and burden of a trial on the merits in the

local forum without first requiring more of the plaintiff than a

prima facie showing . . . ."  Id.  (italics omitted).  Of the two

remaining standards, it is best to utilize the intermediate

standard given that the merits of GT Solar's tort and contract

claims are so intimately bound with the jurisdictional facts.

Further, the court disfavors making findings of preclusive

effect.[20]  The use of the intermediate standard is the best way

to ensure that Goi is not unfairly forced to defend the suit, but

leaves to trial binding resolution of these factual disputes that

are common to both jurisdiction and the merits.


**III.  ANALYSIS**

**A.    Personal jurisdiction**

     In determining whether a non-resident defendant is subject

to its jurisdiction, a district court must decide whether

contacts between the defendant and the forum are sufficient to

---

     [20]In particular, the court, by using the likelihood standard,
leaves open the possibility that the defendant may still raise
jurisdictional objections as information becomes available
through the discovery and trial stages of the litigation.  See,
e.g., Foster-Miller, 46 F.3d at 146; Boit, 967 F.2d at 678.  The
court cautions the parties, however, that it will not look
favorably on piecemeal filings cluttering the court's docket each
time a new jurisdictional fact becomes apparent.

satisfy the state's long arm statute and comport with the
Fourteenth Amendment's Due Process clause.  See, e.g., Sawtelle
v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  In this process,
"a federal court exercising diversity jurisdiction is the
functional equivalent of a state court sitting in the forum
state."  Id. (quotations omitted.)  New Hampshire's long arm
statute is coextensive with federal constitutional limits on
jurisdiction.  See Phillips Exeter Acad. v. Howard Phillips Fund,
Inc., 196 F.3d 284, 287 (1st Cir. 1999); McClary v. Erie Engine &
Mfg. Co., 856 F.Supp. 52, 55 (D.N.H. 1994).  As a result, "the
traditional two-part personal jurisdiction inquiry collapses into
the single question of whether the constitutional requirements of
due process have been met."  McClary, 856 F.Supp. at 55.

The decision whether a forum court has jurisdiction over a
foreign defendant is founded on traditional notions of "fair play
and substantial justice" inherent in the due process clause.
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985)
(quotations omitted).  As such, a court cannot constitutionally
assert jurisdiction unless "the defendant's conduct and
connection with the forum State are such that he should
reasonably anticipate being haled into court there."  World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  This
determination, however, is always "more an art than a science."

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994) (quotations omitted).

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established minimum contacts in the forum State." Burger King Corp., 471 U.S. at 474 (quotations omitted). The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). A court does not properly assert jurisdiction if the defendant's contacts are merely "random," "fortuitous," or "attenuated." Burger King Corp., 471 U.S. at 475. Jurisdiction cannot be created by the unilateral activity of a plaintiff; rather "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

There are two forms of personal jurisdiction. If a defendant maintains "continuous and systematic" contacts with the forum state, then the forum court has general jurisdiction with respect to all causes of action against the defendant. Phillips Exeter, 196 F.3d at 288. Specific jurisdiction exists if the plaintiff's cause of action "relates sufficiently to, or arises

from, a significant subset of contacts between the defendant and the forum." Id.; see also Mass. Sch. of Law, 142 F.3d at 34 (to show specific jurisdiction there must be "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities"). In this case, the plaintiff does not contend that this court can exercise general jurisdiction over Goi. The analysis is thus limited to specific jurisdiction. Cf. Nowak v. Tak How Invs. Ltd., 94 F.3d 708, 712 (1st Cir. 1996).[21]

**Specific jurisdiction**

GT Solar contends that its claims arise out of or relate to Goi contacts with New Hampshire. This court agrees. The court

---

[21]Goi asserts that the court lacks jurisdiction over him under a fiduciary shield doctrine. "The fiduciary shield doctrine holds that the acts of a corporate employee performed in his corporate capacity generally do not form the basis for jurisdiction over him in his individual capacity." Estabrook v. Wetmore, 129 N.H. 520, 523 (N.H. 1987). According to Goi, because his contacts with New Hampshire were made while he was an employee of VRV, it is impermissible to treat this as voluntary contacts in order to assert jurisdiction over him. This argument fails; and Goi all but abandoned this argument at the hearing. Goi's "status as employee[] does not automatically shield [him] from jurisdiction." Id. Rather, the court looks to the nature of Goi's individual contacts, and makes an individual determination. Id.; see also Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 698 (6th Cir. 2000) (listing cases). Further, the court is skeptical that Goi could successfully raise the fiduciary shield doctrine as a defense to allegations that he stole plans from both his employer and his employer's business partner and gave them to a direct competitor of his employer's business partner. See Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir. 1994) (shield is inapplicable if defendant was acting to serve his own personal interests).

of appeals has established a three-part test to determine whether
specific jurisdiction lies.  See Negron-Torres v. Verizon
Commc'ns, Inc., 478 F.3d 19, 24 (1st Cir. 2007); Mass. Sch. of
Law, 142 F.3d at 35.  The plaintiff must demonstrate that:  (1)
the cause of action directly relates to or arises from the
defendant's in-state activities ("relatedness"), (2) the
defendant purposefully availed itself of the benefits and
protections of New Hampshire's laws such that its presence in a
New Hampshire court was voluntary and foreseeable ("purposeful
availment"), and (3) that the exercise of personal jurisdiction
is reasonable ("reasonableness").  See Negron-Torres, 478 F.3d at
24; Phillips Exeter, 196 F.3d at 288.  A plaintiff must
demonstrate that each of the three factors is present to support
a finding of specific jurisdiction.  See United States v. Swiss
Am. Bank, Ltd, 274 F.3d 610, 625 (1st Cir. 2001).

     The relatedness requirement "focuses on the nexus between
[the] defendant's contacts and the plaintiff's cause of action."
Swiss Am. Bank, 274 F.3d at 621 (quotations omitted).  In order
to satisfy the relatedness requirement, "due process demands
something like a 'proximate cause' nexus."  Cambridge Literary
Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295
F.3d 59, 65 (1st Cir. 2002).  But the standard is flexible,
because although the "proximate cause standard better comports
with the relatedness inquiry because it so easily correlates to

22

foreseeability," <u>Nowak</u>, 94 F.3d at 715, the focus of the inquiry is the nexus between the contacts and claim.  Therefore "strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive," <u>id</u>., and the court must look for a "meaningful link" between the contact and the harm.  <u>Id.</u> at 716.

In order for jurisdiction to be proper, then, "the defendant's in-state conduct must form an important or at least material element of proof in the plaintiff's case."  <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 61 (1st Cir. 2005) (quotations and brackets omitted).  The court must determine the "focal point" of the plaintiff's claim, and "assess the interactions between the defendant and the forum state through that prism."  <u>Phillips Exeter</u>, 196 F.3d at 290.  In all cases, a court must begin its relatedness inquiry, however, "by identifying the alleged contacts, since there can be no requisite nexus between the contacts and the cause of action if no contacts exist."  <u>Swiss Am. Bank</u>, 274 F.3d at 621.

The "purposeful availment" prong asks whether the defendant's contacts with the forum "represent a purposeful availment of the privilege of conducting activities in the forum state."  <u>Sawtelle</u>, 70 F.3d at 1389.  The inquiry thus "focuses on the defendant's intentionality," <u>Swiss Am. Bank</u>, 274 F.3d at 623, and "the cornerstones upon which the concept of purposeful

23

availment rest are voluntariness and foreseeability." <u>Sawtelle</u>,
70 F.3d at 1391.

> Voluntariness requires that the defendant's contacts
> with the forum state proximately result from actions by
> the defendant *himself*.  The contacts must be
> deliberate, and not based on the unilateral actions of
> another party.  Foreseeability requires that the
> contacts also must be of a nature that the defendant
> could reasonably anticipate being haled into court
> there.

<u>Phillips v. Prarie Eye Center</u>, 530 F.3d 22, 28 (1st Cir. 2008)
(quotations and citations omitted).

This prong is therefore satisfied only if the plaintiff can
demonstrate that a "defendant purposefully and voluntarily
directs his activities toward the forum so that he should expect,
by virtue of the benefit he receives, to be subject to the
court's jurisdiction based on these contacts." <u>Swiss Am. Bank</u>,
274 F.3d at 624; <u>see</u> <u>also</u> <u>Sawtelle</u>, 70 F.3d at 1391 (court asks
if the defendant "engaged in any purposeful activity related to
the forum that would make the exercise of jurisdiction fair,
just, or reasonable" (quotations omitted)).

Finally, the third prong involves the reasonableness and
essential fairness of asserting jurisdiction over a foreign
defendant.  <u>See</u> <u>Foster-Miller</u>, 46 F.3d at 150; <u>United Elec.,</u>
<u>Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960
F.2d 1080, 1088 (1st Cir. 1992) ("Pleasant Street I").

24

Reasonableness is evaluated through five considerations, termed "gestalt factors" by the court of appeals, namely:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

Sawtelle, 70 F.3d at 1394.  Because this inquiry tests the "reasonableness and fundamental fairness of exercising jurisdiction," Foster-Miller, 46 F.3d at 150 (quotations omitted), it is influenced by strength of the plaintiff's showing of relatedness and purposeful availment.  Sawtelle, 70 F.3d at 1394.  The gestalt factors rarely preclude jurisdiction where the first two prongs have been established, see Cambridge Literary Props., 295 F.3d at 66, but will often tip against exercising jurisdiction when the other factors are weak, see, e.g., Nowak, 94 F.3d at 717.

"Specific personal jurisdiction is both defendant-specific and claim-specific, so that jurisdiction may exist as to some claims and some defendants but not others."  PFIP, LLC v. Planet Fitness Enters., Inc., 2004 WL 2538489, at *4 (D.N.H. 2004).  The plaintiff, therefore, must demonstrate that all three elements of specific jurisdiction are satisfied, see, e.g., Phillips, 530

F.3d at 27, with respect to each claim asserted.  <u>See</u> <u>Phillips</u> <u>Exeter</u>, 196 F.3d at 289.[22]

**1.   <u>Contract claims</u>**

The court first determines whether it may properly exercise jurisdiction over GT Solar's breach of implied in fact contract and breach of contract claims (Counts 3 & 4).  The essence of these two claims was that Goi, by virtue of his position at VRV, helped negotiate and was aware of both the Confidentiality Agreement and the confidentiality provisions of the Purchase Agreement.  GT Solar alleges that, as an employee of VRV,[23] Goi was bound to respect the proprietary nature of information exchanged regarding GT Solar's 36 Rod Reactor, and that in

---

[22]As discussed <u>infra</u> Part III(A)(2), however, where the court properly exercises personal jurisdiction over one claim, and the remaining claims arise from a common nucleus of facts, judicial economy and  overall fairness of the process allow for the exercise of jurisdiction under a pendent jurisdiction theory. <u>Cf.</u> <u>Anderson</u>, 943 F.Supp. at 146.

[23]Goi argues strenuously that jurisdiction is improper because the Confidentiality Agreement and Purchase Agreement were between VRV and GT Solar.  The court notes that this argument is made to support his jurisdictional argument, not in the context of a Rule  12(b)(6) motion for failure to state a claim. Further, the lack of formal privity of contract may not be relevant to GT Solar's implied contract claim.  <u>See</u> <u>generally</u>, Louis Altman & Malla Pollack, <u>Callmann on Unfair Competition,</u> <u>Trademarks and Monopolies</u> § 14:7 (4th ed. 2009).  In any event, the court, in the absence of a Rule 12(b)(6) challenge, views this fact as it pertains to the jurisdictional question only, reserving judgment on the merits for another day.

violation of those agreements, Goi shared that information with
Poly Plant.

**(a)  <u>Relatedness</u>**

In the context of contract claims, the court analyzes
whether there (1) are jurisdictional contacts with the forum, and
(2) a sufficient nexus.  <u>Swiss Am. Bank</u>, 274 F.3d at 621.  The
mere presence of a contract "is not *itself* a contact," and cannot
itself "automatically establish minimum contacts."  <u>Id.</u>  Rather,
the court engages in a "contract-plus" analysis, looking at
"prior negotiations and contemplated future consequences along
with the parties' actual course of dealing."  <u>Id.</u> (quotations and
ellipses omitted).  "[W]here the cause of action is for an
alleged breach of contract, we ask whether the defendant's
activity in the forum state was instrumental either in the
formation of the contract or its breach."  <u>Adelson v. Hananel</u>,
510 F.3d 43, 49 (1st Cir. 2007) (quotations omitted).

First, the court concludes that GT Solar has demonstrated
that it is likely that Goi reached into the forum through his
email and telephone contacts regarding both the Confidentiality
Agreement and the confidentiality clause in the Purchase
Agreement.  Bosco states that Goi was directly involved in
negotiating the terms of both agreements, <u>see</u> Bosco Aff. ¶¶ 9,
14, 27, and refers to supporting emails.  <u>See</u> Bosco Aff. Ex. 4-

27

6.[24]  He also states that "[s]ubstantially all of the telephone
communication that I had with Mr. Goi was also from my New
Hampshire office."  Bosco Aff. ¶ 3.  Goi, on the other hand, only
states that he does "not remember the negotiation or signature of
any confidentiality agreement." Goi Aff. II, at

─────────────

[24]As discussed at length supra, whether these emails came
from Goi is disputed.  The court concludes, however, that GT
Solar has established that these emails likely came from Goi.
Although this finding is not entirely necessary given the
uncontested statement by Bosco that he had regular telephone
contact with Goi by telephone, GT Solar has also demonstrated the
likelihood that there was regular email contact between Goi and
Bosco in New Hampshire.  Among the emails submitted to the court
were multiple exchanges addressed to and from Bosco and "Fabrizio
Goi," including some from his personal email address.  One email,
from "Fabrizio Goi" at "management.vrv" and addressed, in part,
to "Dear Jim" includes language indicating that it was sent in
response to "our telecon."  See Bosco Aff. Ex. 25; cf. Bosco Aff.
Ex. 22, 26.  Another email to Bosco from the "management.vrv"
address with a signature line from "Fabrizio Goi" begins "as
discussed yesterday over the phone."  See Bosco Aff. Ex. 9.  The
court recognizes that Goi disputes whether he ever saw the
"management.vrv" and "commercial.vrv" emails.  The text of these
emails, however, indicates that they were sent in response to
telephone conversations with Bosco, creating the inference that
Goi was knowledgeable about their content.  At this point in the
litigation, therefore, before extensive discovery of the VRV
computers has been accomplished and the court's review is limited
to Goi's sometimes incomplete and contradictory affidavits, GT
Solar has made the threshold showing that Goi likely had
extensive email communication with Bosco in New Hampshire in
conjunction with the alleged regular telephone traffic.

    The court reminds the parties that if, after the completion
of discovery, it can be shown that these emails were in fact from
another party and made with Goi's knowledge, then the court is
open to a renewed jurisdictional challenge.  See e.g., Foster-
Miller, Inc, 46 F.3d at 146; Boit, 967 F.2d at 678.  That said,
given the contentiousness of the litigation thus far, the court
cautions the parties against re-raising these issues before the
discovery record develops sufficiently.

¶ 5.[25]  It is well established that a claimed lack of memory is
insufficient to rebut uncontroverted evidence to the contrary.
see e.g., Ayer v. United States, 902 F.2d 1038, 1045 (1st Cir.
1990).  Therefore, GT Solar has established the likelihood that
sufficient minimum contacts occurred.  See Swiss Am. Bank, 274
F.3d at 622 (recognizing that telephone calls and letters are
unquestionably a jurisdictional contact).

        The next issue is whether the jurisdictional contacts
alleged -- namely Goi's emails and telephone calls surrounding
the negotiation and execution of the Confidentiality Agreement
and Purchase Agreement -- are sufficiently related to the claims
alleged to confer jurisdiction on this court.  "For the contract
claim[s], the answer is a straightforward yes."  Jet Wine &
Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 10 (1st Cir.
2002).  Contacts that are "instrumental in the formation of the
contract in dispute" satisfy the relatedness requirement of the
due process inquiry.  Workgroup Tech. Corp. v. MGM Grand Hotel,
LLC, 246 F.Supp. 2d 102, 113 (D.Mass. 2003); see also, e.g.,
Phillips Exeter, 196 F.3d at 289.  Goi's telephone and email
contacts with New Hampshire, where he is alleged to have
negotiated the terms of the contracts in question, go to the
heart of each claim.  See Scuderi Group, LLC. v. LGD Tech. LLC,

---

        [25]Goi admits *knowledge* of the confidentiality provisions of
the Purchase Agreement.  Goi Aff. II at ¶ 5.

575 F.Supp. 2d 312, 322 (D.Mass. 2008).  GT Solar has satisfied the relatedness inquiry.

**(b)    <u>Purposeful availment</u>**

In evaluating a contract claim, the mere existence of a contract with a forum state resident alone "is insufficient to establish purposeful availment of that forum's jurisdiction." <u>Ne. Land Servs., Ltd. v. Schulke</u>, 988 F.Supp. 54, 58 (D.R.I. 1997).  Rather, courts employ a "contract-plus" analysis, <u>id.</u>, looking "at all of the communications and transactions between the parties, before, during and after consummation of the contract," <u>Workgroup Tech. Corp.</u>, 246 F.Supp. 2d at 114, to determine whether these acts "evince a voluntary decision by the defendant to interject himself into the local economy" and therefore subject himself to the jurisdiction of local courts. <u>Ne. Land Servs.</u>, 988 F.Supp. at 58.

"Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities."  <u>Adelson</u>, 510 F.3d at 50 (quoting <u>Burger King</u>, 471 U.S. at 473) (quotations and brackets omitted).  Here, Goi was involved in the negotiation of both agreements, voluntarily participating in the structuring of terms that would impose certain confidentiality burdens on him,

30

enabling his access to information he allegedly later used for

personal gain.  In this scenario, it is highly foreseeable that

later misuse of information acquired during these contacts with

the forum -- misuse expressly prohibited by the agreement that

Goi allegedly participated in negotiating -- might result in Goi

being haled into court in New Hampshire.  See Jet Wine & Spirits,

298 F.3d at 11 (voluntary act of negotiating contract and

receiving certain benefits from a counter-party in a forum in

exchange for certain obligations made it foreseeable that

defendant was rendering itself liable to suit there.)  GT Solar

has therefore met its burden to satisfy the purposeful availment

prong.[26]

---

[26]Goi asserts that the forum selection clause in the Purchase
Agreement establishing London as the exclusive situs of
litigation renders it impossible for GT Solar to establish the
purposeful availment prong.  This argument, however, ignores the
basic principle that in purposeful availment analysis, the
defendant's objective and intention prevail.  Here, although the
forum selection clause may have some bearing on foreseeability,
it does not change the fact that Goi's alleged negotiation of the
contracts demonstrate that he voluntarily reached into the forum.
Further, despite the existence of a forum selection clause
governing business disputes between VRV and GT Solar during the
course of their relationship, it is still foreseeable that Goi
would be asked to defend himself in New Hampshire for acts
independent of any dispute between VRV and GT Solar, namely
allegedly stealing the plans for the 36 Rod Reactor as he was
leaving VRV to begin his new employment with Poly Plant.

**(c)  Reasonableness**

The final question in the jurisdictional inquiry is whether the exercise of jurisdiction is reasonable in light of the five familiar "gestalt" factors.  See Sawtelle, 70 F.3d at 1394.  Here, the balance of factors tips in favor of retaining jurisdiction.

The first factor addresses fairness in light of the burden on the defendant of appearing in a foreign jurisdiction.  "[S]taging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, . . . [so] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden."  Pritzker, 42 F.3d at 64.  Although this factor weighs in favor of a defendant only where the exercise of jurisdiction "is onerous in a special, unusual, or other constitutionally significant way," id., the court must carefully analyze this factor to "guard against harassing litigation."  Nowak, 94 F.3d at 718.  This factor favors GT Solar's position.  Although Goi resides in Italy, he has not demonstrated[27] that defending in this forum poses a unique burden.[28]

---

[27]In fact, as the vigorous and skilled written and oral advocacy of Goi's counsel demonstrates, there appears to be no unique impediment to Goi's ability to aggressively defend himself in New Hampshire.

[28]Although the court is not blind to Goi's concern about the burden on his family in Italy, that situation is not unique to many foreign defendants and does not appear to pose a barrier to

32

The second factor, the interest of the forum, focus on the forum state:

> [A]lthough a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished where the injury occurred outside the forum state. Nonetheless, our task is not to compare the interest of the two sovereigns - the place of injury and forum state - but to determine whether the forum state *has* an interest.

Id. (citations omitted). Again, this factor favors GT Solar. New Hampshire certainly has an interest in protecting its citizens from losses that occur as a result of misappropriation of trade secrets, even if the actual misappropriation occurred elsewhere. See S&D Trading Acad., LLC v. AAFIS, Inc., 494 F.Supp. 2d 558, 569 (S.D. Tex. 2007). This interest may be diminished by the fact that the actual misappropriation occurred in Italy, but it is nonetheless important, especially where the forum contacts are alleged to be vital to the extraction of those secrets. See infra, note 29.

The third factor requires the court to accord a degree of deference to the plaintiff's choice of forum. Sawtelle, 70 F.3d at 1395. Obviously, it is more convenient for GT Solar to litigate in New Hampshire than the other potential locations, namely Italy and California. Further, GT Solar did not choose a

---

Goi's employment with a United States company. Cf. Adelson, 510 F.3d at 51 (fact that defendant was a legally blind diabetic, while sympathetic, was not sufficient to show an unusual burden).

random forum, but rather its home district, where it has a heightened interest. <u>See</u> <u>id.</u>

The fourth factor, evaluating the judicial system's interest in obtaining the most effective resolution of the case, is usually "a wash." <u>Nowak</u>, 94 F.3d at 718. This case illustrates the truth of this maxim. Many potential witnesses and key documents are located in Italy, but many others are in this district. <u>See</u> <u>infra</u>, Part III(B). In any forum, this litigation will present challenges involving limits on court's subpoena power and the availability of witnesses. <u>See</u> <u>id.</u> This factor favors neither party.

Finally, the fifth factor "addresses the interests of the affected governments in substantive social policies." <u>Nowak</u>, 94 F.3d at 719. "Here, the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." <u>Sawtelle</u>, 70 F.3d at 1395. This factor is "a wash" as well. <u>See</u> <u>Ne. Land Servs.</u>, 988 F.Supp. at 59. New Hampshire has a strong interest in providing its citizens a forum to redress injuries. <u>See</u> <u>Scuderi Group</u>, 575 F.Supp. 2d at 324. The Italian judicial district in which VRV is located surely has an interest in providing a fair forum for its citizens faced with allegations of misconduct allegedly occurring within its borders. <u>See</u> <u>Nowak</u>, 94 F.3d at 719.

34

The gestalt factors are either neutral or favor GT Solar. See Workgroup Tech. Corp., 246 F.Supp.2d at 115. GT Solar has satisfied its burden to demonstrate reasonableness, and thus has established this court's personal jurisdiction over Goi with respect to the contract claims (Counts 3 & 4).

**2.    Remaining claims**

GT Solar also alleged four additional counts, including misappropriation of trade secrets and conversion claims (Count 1 & Count 2). It also alleges tortious interference with its business relations and asserts a state law Consumer Protection Act claim (Count 5 & Count 6). The court declines to separately analyze these claims, and instead will exercise pendent jurisdiction over them. See, e.g., Anderson, 943 F.Supp. at 147 (court exercised pendent jurisdiction over contract claim arising from same conduct as tort claim over which court properly exercised jurisdiction).

> [U]nder the doctrine of pendent personal jurisdiction, a defendant may be required to defend a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.

CE Distribution, 380 F.3d at 1113 (quotations omitted) (contract and tort claims); see also, e.g., United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002). "Considerations of judicial

economy, avoidance of piecemeal litigation and overall convenience of the parties are served by retaining jurisdiction" over all claims arising from the same facts. Hall, 2006 WL 902449, at *6 (quotations omitted).

Here, each count arises from a common nucleus, namely that Goi, through his contacts with GT Solar, allegedly had access to, used improper means to obtain, and subsequently misappropriated the proprietary information regarding GT Solar's 36 Rod Reactor and shared that information with its direct competitor, Poly Plant. Therefore, jurisdiction clearly lies over Goi with respect to the contract claims, and although the court usually prefers and employs a claim-specific and defendant-specific approach in matters of personal jurisdiction, see supra Part III(A); PFIP, 2004 DNH 159 at 12; Phillips Exeter, 96 F.3d at 289, it would be unnecessarily burdensome to both the litigants and the courts to have the remaining claims separately adjudicated in distant fora. Id.; see CE Distribution, 380 F.3d at 1113.[29]

_____

[29]The court observes, without deciding, that its jurisdiction likely lies over Goi with respect to the tort claims as well. As discussed supra, the Court of Appeals has stated that the relatedness inquiry analysis involves a standard between a "but for" and a strict proximate cause test. Anderson, 943 F.Supp. at 142. The closeness of the causal nexus required to satisfy the relatedness test is difficult to define, especially in a trade secrets case. Compare Scuderi Group, 575 F.Supp. 2d at 316-317, 322 (where tort committed outside the jurisdiction, contacts found to have sufficient nexus); with LaVallee, 193 F.Supp. 2d at

303 (where tort committed outside the jurisdiction contacts are found to be "ancillary").

    This record could yield an inference that Goi's conduct in the forum represents a meaningful link between New Hampshire and the torts alleged, and therefore satisfies the relatedness test. GT Solar has expressly alleged, and the court could infer from this record, a likelihood that Goi appropriated trade secrets through his contacts with New Hampshire and that this acquisition "by improper means" was part of a unified plan to later share them with a different employer, Poly Plant.  See S&D Trading Acad., 494 F.Supp. 2d at 567 (although misappropriation occurred in China, the "first step" of learning the trade secrets began in forum).  This inference might be drawn from the timing of Goi's acquisition of the trade secrets in relation to his departure from VRV and almost immediate employment with Poly Plant, and the relative speed with which Poly Plant's new products hit the market.  Although GT Solar's evidence on this point may be thin, under this Rule 12(b)(2) standard and on this record, the court would likely conclude that it is sufficient to survive Goi's challenge.

    It is a close case, however, as the inquiry is fact specific and courts have reached varying conclusions.  Compare, Scuderi Group, 575 F.Supp. 2d at 321-24 (plaintiff, in a misappropriation of trade secrets case, found to satisfy all three prongs even though actual misappropriation took place outside the forum); Ne. Land Servs., 988 F.Supp. at 59; Microbrightfield v. Boehringer, 2006 WL 306489 at *4 (D.Vt. 2006); S&D Trading Acad., 494 F.Supp. 2d at 567; with PFIP, LLC v. You-Fit, Inc., 2009 WL 1121359, at *13 (D.N.H. 2009) (even assuming first two prongs of test, plaintiff in a misappropriation of trade secrets case found not to have satisfied the reasonableness prong).  Discovery is still in its early stages.  At this point, the most prudent and efficient course of action is to retain jurisdiction over the tort claims under a pendent jurisdiction theory.

    Goi did move, after oral argument, to supplement the record supporting his motion to dismiss.  He produced evidence that he apparently had discussions regarding potential employment opportunities with another Italian company in late 2006. Although he contends that this evidence rebuts the temporally-based inferences referred to above that could support GT Solar's allegation of a unified plan to extract GT Solar's trade secrets during his contacts with New Hampshire, his affidavit contains no

**B.**    **Forum non Conveniens**

Goi also requests that this court dismiss the action under the doctrine of *forum non conveniens*, arguing that Italy is the most appropriate forum to adjudicate this dispute.  *Forum non conveniens* is "a discretionary tool for the district court to dismiss a claim, even when it has proper jurisdiction." Adelson, 510 F.3d at 52 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) and Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518 (1947)).  "To obtain a dismissal on *forum non conveniens* grounds, a defendant must make a two-part showing: (1) that an adequate alternative forum exists, and (2) . . . that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Philipps v. Talty, 555 F.Supp. 2d 265, 269 (D.N.H. 2008) (quotations omitted).  A defendant can satisfy the first condition if he "demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there."  Interface Partners Int'l, Ltd. v.

---

direct denial of "improper means," i.e., contact with Poly Plant or its originators during the relevant time period.  Moreover, while this evidence tends to show that Goi was actively pursuing other employment opportunities, it does not demonstrate that in the course of his job search he was not also discussing a potential position with Poly Plant.  In any event, because the court will exercise pendent jurisdiction over the tort claims, Goi's eleventh-hour motion is denied as moot.  See Part IV, infra.

Hananel, 575 F.3d 97, 101 (1st Cir. 2009) (quotations omitted).
The second condition involves a more searching inquiry, namely
that "the defendant must show that the compendium of factors
relevant to the private and public interests implicated by the
case strongly favors dismissal." Id. (Quotations omitted.)
"This balancing test hinges on whether the defendant can show
that considerations of convenience and judicial efficiency
strongly favor the proposed alternative forum.  In all events, as
to both private and public interests, flexibility is the
watchword." Philipps, 555 F.Supp. 2d at 270 (quotations and
citation omitted).

    The court of appeals has "emphasized that the doctrine of
*forum non conveniens* is used to avoid serious unfairness, and
that [a] plaintiff's choice of forum will be disturbed only
rarely." Nowak, 94 F.3d at 719 (quotations omitted).  Recently,
however, while reaffirming the notion that "a plaintiff enjoys
some degree of deference for his original choice of forum," it
has cautioned courts that in conducting this analysis, "a
citizen's forum choice should not be given dispositive weight,
and dismissal should not be automatically barred when a plaintiff
has filed suit in his home forum." Interface Partners, 575 F.3d
at 101-02 (quotations omitted).

1.    **Alternative forum**

The parties vigorously dispute the first factor, namely,
whether Italy provides an adequate alternative forum for GT
Solar's tort and contract claims.  "Courts generally deem the
first requirement satisfied if the defendant demonstrates that
the alternative forum addresses the types of claims that the
plaintiff has brought and that the defendant is amenable to
service of process there."  Philipps, 555 F.Supp. 2d at 269
(quotations omitted).[30]  Goi initially asserted that under
Italian law, GT Solar would have adequate redress of all claims.
GT Solar objected, citing Mercier v. Sheraton Int'l, Inc., 935
F.2d 419, 425 (1st Cir. 1991) ("Mercier I"), stating that Goi,
who had, at that stage of the litigation, offered only a copy of
the Italian Code regarding unfair competition, failed to meet his
burden of affirmatively showing that Italy offered an adequate
alternative forum on all claims.  GT Solar further argued that
Goi had not addressed the availability of certain procedural
safeguards.  Goi responded, with additional evidence, including
an affidavit from Italian counsel.[31]  See Def.'s Reply, Ex. 2.

---

[30]The parties do not dispute that Goi would be amenable to
service of process in Italy.

[31]While Goi attaches copies of the Italian code regarding
unfair competition, and an affidavit from an experienced lawyer,
it does not provide the court with the measure of comfort found
determinative in Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345,
1351-52 (1st Cir. 1992)("Mercier II").  Although the court

Further, Goi argued that he had satisfied its burden because although the remedies available in Italy may not be identical, "adequacy is met if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Def.'s Reply at 7 (quoting Mercier I, 935 F.2d at 424).

While this court agrees that an alternative forum need not offer an "identical" cause of action, the defendant, as noted in note 31 supra, has "failed to satisfy fully the initial burden which must be shouldered by a defendant seeking a *forum non conveniens* dismissal." Mercier I, 935 F.2d at 425.[32]

Even assuming, however, that Goi made a sufficient showing of adequacy, cf. Nowak, 94 F.3d at 720-21 (even though foreign forum was adequate, court denied defendant's motion because the public and private interest factors weighed in favor of dismissal), the court concludes that Goi has failed to demonstrate that the other *forum non conveniens* factors weigh in favor of dismissal.

---

assumes that Italian law allows for redress for breach of contract, the defendant carries the burden of proving it, and his proof supporting his *forum non conveniens* argument fails to address breach of contract remedies. Cf. Mercier I, 935 F.2d at 425 (defendant has burden to demonstrate adequacy).

[32]While a "perfect fit" is not required, cf. Mercier II, 981 F.2d at 1352, n.5, the burden is the defendant's to bear. Mercier I, 935 F.2d at 425.

## 2.  **Convenience and judicial efficiency**

The defendant must demonstrate that the public and private interest considerations weighing on the parties' convenience and the ends of justice strongly favor the alternate forum.  See, e.g., Interface Partners, 575 F.3d at 101.  Although the court of appeals has endorsed a series of considerations useful in weighing the private and public interest factors, see id., "not every item applies in every case and, in the last analysis, the list of factors is illustrative rather than all-inclusive.  The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."  Philipps, 555 F.Supp. 2d at 270 (quotations omitted).  GT Solar

> should not be deprived of the presumed advantage of [its] home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be all out of proportion to plaintiff's convenience,  . . . or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems.

Koster, 330 U.S. at 524; see also Nowak, 94 F.3d at 720.[33]

---

[33]The court acknowledges that the court of appeals has repeatedly cautioned district courts not to misinterpret the Koster court's use of the terms "oppressive" and "vexation" as raising the bar for dismissal.  Rather, the court finds these terms helpful in determining whether the relevant considerations "strongly favor" Italy as an alternative forum.  See Iragorri, 203 F.3d at 15.

**(a) <u>Private interest factors</u>**

The "private interest" factors have been discussed by both the Supreme Court and the court of appeals:  "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and the possibility of view of premises, if [a] view would be appropriate to the action," <u>Iragorri v. Int'l Elevator, Inc.</u>, 203 F.3d 8, 12 (1st Cir. 2000) (quotations and brackets omitted) (quoting <u>Gulf Oil Corp.</u>, 330 U.S. at 508), as well as "all other practical problems that make trial of a case easy, expeditious and inexpensive and questions as to the enforceability of a judgment if one is obtained." <u>Mercier I</u>, 935 F.2d at 424 (quotations and brackets omitted).  The court of appeals has added, however, that there is "no doubt that the flip side of this coin has equal pertinence; the judge must consider those factors that threaten to make trial more cumbersome, prolong it, or drive up costs." <u>Iragorri</u>, 203 F.3d at 12.

In this case, Goi has not satisfied his burden that the private factors weigh in favor of dismissal. <u>Nowak</u>, 94 F.3d at 719-20.  The court has considered the private interest considerations raised by Goi:  that Goi and many potential VRV witnesses and VRV documents are located in Italy, the burden on Goi (and his family) to travel to the United States to defend the suit, the difficulty and cost of securing testimony of witnesses

43

in Italy to testify (including compulsory process issues), and
enforceability concerns.  In an international business dispute
such as this, however, where witnesses,[34] documents,[35] and parties
are potentially located throughout Italy and the United States,
and either the Italian court or this court may need to utilize
translation services depending on the ultimate forum, the court
cannot conclude that these considerations "strongly favor" Italy
as the appropriate forum.[36]  See Nowak, 94 F.3d at 720-21 (issues
facing Hong Kong defendant sued by Massachusetts plaintiffs in
home forum would be faced by plaintiffs in alternate forum, and

---

[34]Each party cries foul at the apparent lack of specificity
inherent in the other's claims of witness inconvenience.  But the
burden here rests with Goi.

[35]The court is unpersuaded by Goi's assertion that most of
the key documents are written in Italian.  On this record, it
appears that these documents, at most, *may* be evenly divided
between the two languages.  Further, all of the GT Solar
employees, Goi, and VRV's top managers appear to be fluent in
English.

[36]Goi has filed numerous motions concerning the "non-
cooperation" of VRV, (which is not a party to this case) with his
attempts to obtain discovery.  As discussed in note 39 infra, and
also in the court's discovery orders, see id., VRV has not
demonstrated a lack of cooperation, but rather unwillingness to
agree to every detail of Goi's discovery demands. In any event,
Goi does not contest that if necessary he can avail himself of
the protections of the Hague Evidence Convention. Although in
some cases the inconvenience of resort to the Hague Convention
may weigh in favor of the alternative forum, here, where VRV has
already agreed to forensic computer investigation by an outside
firm retained jointly by the parties, this factor does not weigh
in favor of dismissal.

thus do not constitute disproportionate inconvenience justifying dismissal); cf. Iragorri, 203 F.3d at 15 (dismissing on *forum non conveniens* grounds where most of the principal witnesses resided outside the forum, no key documents were in English, and the location of the accident and therefore the factfinder's potential view were in the alternate forum); Philipps, 555 F.Supp. 2d at 270-71 (same).

The court is mindful of the alleged burden on Goi's family, see note 28 supra, but does not find this burden to tip the balance in favor of dismissal, particularly given that despite these concerns, Goi left employment by an Italian company, VRV, to join a California based company, Poly Plant.  Finally, Goi questions whether an eventual judgment of this court favorable to GT Solar would ever be enforceable in Italy.  As the court of appeals noted in Nowak, 94 F.3d at 720, however, this factor does "not constitute the type of oppressiveness and vexation . . . disproportionate to [GT Solar's] inconvenience" of suing in Italy.  Id.

The court recognizes the inherent inconvenience of defending a lawsuit arising from and international business transaction. But under this standard, and on this record, the court cannot conclude that such inconvenience is so oppressive and largely

disproportionate to Goi that dismissal on *forum non conveniens*
grounds is appropriate.


**(b)    <u>Public-interest factors</u>**

Goi also argues that certain public interest factors favor
an Italian forum.

> Factors relevant to the public interest include
> such things as the administrative difficulties of
> docket congestion; the general goal of having
> localized controversies decided at home, and
> concomitantly, ease of access to the proceedings
> on the part of interested citizens; the trier's
> relative familiarity with the appropriate rules of
> decision; and the burdens of jury duty.

<u>Iragorri</u>, 203 F.3d at 12 (quotations omitted) (quoting <u>Gulf Oil
Corp.</u>, 330 U.S. at 508-09).

Goi first points to a purported lack of local interest
because he, an Italian citizen, is accused of stealing "trade
secrets while they were in the possession of an Italian company
and disclosed them to a California company," arguing their claims
"are not the localized controversies that public policy suggests
should be decided at home."  Def.'s Mot. at 9.  What this
argument ignores, however, is that GT Solar, whose trade secrets
are at issue, is located in New Hampshire.  Goi cannot
successfully establish a lack of local interest by bypassing the
inconvenient fact that GT Solar exists here and possesses the

trade secrets at the heart of the complaint.[37] Cf. Philipps, 555 F.Supp. 2d at 272 (rejecting contention that car accident that killed an infant resident of St. Martin, "was not an event of broad public interest in St. Martin").

Goi has not demonstrated any unusual burdens on a New Hampshire jury that necessitate dismissal. Although Goi asserts that it would be burdensome for the jury "to wade through documents and testimony, translated from Italian," Def.'s Mot. at 10, this argument, like those discussed supra, ignores the fact that in this case, many documents were written in, and much testimony will be given in, the English language. At most, therefore, the jury may need to hear testimony and review documents presented in both languages, not an unusual or undue burden. Cf. Philipps, 555 F.Supp. 2d at 271 (foreign forum found more convenient where, in a personal injury action, "*all* of the pertinent reports and records generated out of the [accident]

---

[37]Goi also asserts that the existence of the forum selection clause in the purchase agreement assigning London as the sole jurisdiction for litigating disputes under that agreement "reduces the local interest" in this litigation. Although it is true that forum selection clauses are a factor to consider, see Mercier II, 981 F.2d at 1358, the force of this argument is diminished because, in this analysis, the court weighs the relative convenience of litigating in this district and Italy, not London.

investigation and medical treatment" were written in French, and
"the vast majority of witnesses" spoke French)(emphasis added).

Finally, the parties disagree about whether Italian or
American law is controlling in this litigation.  Even assuming,
arguendo, that Italian law controls, "[t]he need to apply foreign
law does not ineluctably point to dismissal if a balancing of
relevant factors indicates a plaintiff's choice of forum is
appropriate."  See Omni Hotels Mgmt. Corp. v. Round Hill Dev.,
Ltd., 675 F.Supp. 745, 753 (D.N.H. 1987)(citing Piper Aircraft
Co., 454 U.S. 235, 260, n. 29 (1981)).  Where, as here, the
factors do not suggest the alternative forum is the superior
one,[38] "[t]his concern is not sufficient to overcome the
presumption in favor of [GT Solar's] chosen forum."  Nowak, 94
F.3d at 720-21.

As neither the "public interest" factors nor "public
interest" factors strongly favor a *forum non conveniens* dismissal
of the case, Goi's motion to dismiss on this basis is denied.

---

[38]Goi does not contend, and in any event, the court does not
conclude, that administrative difficulties of docket congestion
are troubling in this case.

C.    **Judicial Notice**

Finally, Goi moved that this court take judicial notice of
what he describes as "non-cooperation" of VRV during limited,
court-ordered jurisdictional discovery.[39]  Judicial notice is
appropriate when the judicially noticed fact is "not subject to
reasonable dispute in that it is either (1) generally known
within the territorial jurisdiction of the trial court or (2)
capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned."  Fed. R. Evid.
201(b); see also, e.g., Lussier v. Runyon, 50 F.3d 1103, 1113-14
(1st Cir. 1995).   Judicial notice of "non-cooperation" requested
by the defendant does not satisfy, "under any measure," the
requirements for a judicially noticed fact.  See Nw. Bypass Group
v. U.S. Army Corps. of Eng'rs, 488 F.Supp. 2d 22, 26 (D.N.H.

---

[39]Although the court is denying the motion on purely legal
grounds, it questions Goi's claim of "non-cooperation."
Specifically, VRV, GT Solar, and GOI agreed to discovery of VRV's
computers (including laptops) by an established international
accounting firm to be retained by both parties to assist the
parties in determining the origin of emails from Italy to GT
Solar.  See GT Solar, Inc. v. Goi, 1:08-cv-249 (D.N.H. Mar. 18,
2009).  Goi now claims that this expert is in fact not
independent and consults only for GT Solar, and requests that an
additional forensic investigator of his choosing be permitted to
conduct discovery at VRV according to terms dictated by his
counsel.  While the court will of course keep an open mind as
discovery progresses, it is not convinced that VRV's refusal to
accede to Goi's requests can be fairly characterized as "non-
cooperation."

2007).  First, "non-cooperation" is the type of fact "vulnerable to reasonable dispute" uniquely inappropriate for judicial notice.  <u>Lussier</u>, 50 F.3d at 1114.  Moreover, the level of "cooperation" by either party, or a third party corporation located in Italy, is not the type of information "generally known" within the District of New Hampshire and cannot be gleaned from an unquestionably accurate source.  <u>See</u> <u>United States v. Hoyts Cinemas Corp.</u>, 380 F.3d 558, 570-71 (1st Cir. 2004).

The defendants also contend that pursuant to Federal Rule of Evidence 201(d), judicial notice is mandatory.  But in order for judicial notice to be mandatory under Rule 201(d), the facts offered for notice must of course first satisfy the indisputability requirements of Rule 201(b).  <u>See</u> <u>Rivera-Torres v. Ortiz Velez</u>, 341 F.3d 86, 100-01 (1st Cir. 2003) (Rule 201(d) does not apply where facts are subject to reasonable dispute).  This court, therefore, is not *required* to take judicial notice as requested by the defendant because it would be inappropriate for the court to judicially notice the alleged "non-cooperation" by VRV in the first place.  <u>See</u> <u>id.</u> at 101.  The defendant's motion is denied.

IV.  **CONCLUSION**

The court concludes that it may properly exercise personal jurisdiction over the defendant, and therefore Goi's motion to dismiss[40] for lack of personal jurisdiction and for *forum non conveniens* is denied.  His motion for judicial notice of non-cooperation with jurisdictional discovery[41] is also denied. Finally, Goi's motions to supplement the record[42] and for leave to file a reply memorandum[43] is denied as moot.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 17, 2009

cc:  Adam J. Gill, Esq.
     Elisa Miller, Esq.
     Luke Dauchot, Esq.
     Michael Shipley, Esq.
     R. Matthew Cairns, Esq.
     Richard C. Harlan, Esq.
     James P. Ball, Esq.
     John C. Pitts, Esq.
     Lanny J. Davis, Esq.
     Michael J. Connolly, Esq.

---

[40]Document no. 17.

[41]Document no. 38.

[42]Document no. 47.

[43]Document no. 49.